**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

DONNA JONES,

    Plaintiff,

v.                                          Case No.: _____

DEFENDERS, INC.,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff DONNA JONES sues Defendant DEFENDERS, INC. and states:

### Introduction

1. This is an action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Tennessee Home Solicitation Sales Act of 1974, Tenn. Code Ann. § 47-18-701 *et seq.* ("THSSA").

2. The THSSA provides consumers in the state with certain protections when companies solicit products to them in their homes. Tenn. Code Ann. § 47-18-701 *et seq.*

3. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent abusive "robocalls."

4. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30,821 (1991). Senator Hollings presumably intended to give telephone

subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

6. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one consumer complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015).

7. As the Seventh Circuit Court of Appeals said: "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305-306 (7th Cir. 2017).

**Jurisdiction, Venue and Parties**

8. This Court has original jurisdiction over Plaintiff's claims arising under the TCPA pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims as they arise out of a common nucleus of operative fact, and form part of the same case or controversy. 28 U.S.C. § 1367.

10. Venue is appropriate in the United States District Court for the Western District of Tennessee, Western Division, pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred in Shelby County, Tennessee.

11. Plaintiff is a natural person, and citizen of the State of Tennessee, residing in Memphis, Shelby County, Tennessee.

12. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is an Indiana corporation, with its principal place of business located at 3750 Priority Way South Drive, Suite 200, Indianapolis, Indiana 46240-3815, and which conducts business in the State of Tennessee through its registered agent, Corporation Service Company, located at 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

14. Defendant's website describes Defendant as ADT Security Services' only Authorized Premier Provider, committed to providing families with the highest quality home security and automation options to fit their needs.

15. All conditions precedent to the filing of this action have been met.

## Factual Allegations

16. On or around October 23, 2017, Defendant's agent installed a home security system at Plaintiff's home. The agent did not finish the installation until the early hours of the next morning.

17. When the installation was complete, Defendant's agent did not ask Plaintiff to sign a contract.

18. Approximately two weeks later, on November 6, 2017, Plaintiff received correspondence (the "Correspondence") from Defendant. The Correspondence included, a Letter, an eight-page "Alarm Services Contract," a "Schedule of Protection," and a "Notice of Cancellation." A copy of the Correspondence is attached as **Exhibit 1**.

19. The Letter stated there had been a digital processing error with the electronic contract Plaintiff allegedly signed at installation. It requested that Plaintiff initial, sign and return

the Alarm Services Contract and the Schedule of Protection, both of which were dated November 9, 2017.

20. Page three of the Alarm Services Contract contained a provision providing in part:

AUTHORIZATION TO CONTACT: If I have provided or do provide Dealer or ADT with a phone number, including but not limited to a cell phone number, […] I agree that Dealer and ADT may contact Me at this/these number(s). I also agree to receive calls and messages such as pre-recorded messages, calls and text messages from automated dialing systems at the number(s) provided.

21. Plaintiff never signed the Alarm Services Contract.

22. The Notice of Cancellation included in the Correspondence provided that Plaintiff could cancel the transaction, without penalty or obligation, no later than midnight of November 14, 2017, by faxing a signed and dated copy of the cancellation notice to Defendant at the fax number 866-975-1720.

23. The Notice of Cancellation provided that if Plaintiff cancelled, "any property traded in, any payments made by [Plaintiff] under the agreement, and any negotiable instrument executed by [Plaintiff] will be returned within ten (10) business days following receipt by [Defendant] of [Plaintiff's] Cancellation Notice, and any security interest arising out of the transaction will be cancelled."

24. On November 13, 2017, Plaintiff signed and dated the Notice of Cancellation, and faxed it to Defendant at 866-975-1720. Confirmation of Plaintiff's fax to Defendant is attached as **Exhibit 2**.

25. Defendant did not attempt to pick up any of the goods delivered to Plaintiff.

26. Defendant sent Plaintiff an invoice dated December 1, 2017, charging Plaintiff $54.58 for services for the period from December 1 through December 31, 2017.

27. On December 14, 2017, Defendant sent Plaintiff another contract, this time dated December 21, 2017, with a letter and several stickers asking her to sign or initial in multiple places. It also included another "Notice of Cancellation".

28. On December 17, 2017, Defendant began calling Plaintiff.

29. On January 30, 2018, more than 2 months after Plaintiff sent Defendant a Notice of Cancellation, Defendant sent Plaintiff another contract. This time the letter accompanying the unsigned contract was different. The letter indicated "ACTION REQUIRED, PLEASE READ." The letter went on to say, in part: "To ensure that your account is correctly processed with ADT and that your service continues uninterrupted, we need to make a correction to your Alarm Services Agreement. Please follow the instructions listed below as soon as possible. 1. Review the enclosed documents and sign and initial where indicated.  2. Return the signed documents in the envelope provided.  3. Retain the enclosed 'copy' for your records."  A copy of the letter and 3rd unsigned Contract are attached as **Exhibit 3**.

30. Defendant charged Plaintiff $108.16 on October 21, 2017, $206.48 on October 23, 2017, and $67.87 on October 26, 2017.

31. Defendant refunded Plaintiff the $108.16. Defendant did not return any of Plaintiff's other payments under any alleged agreement.

32. Defendant also called Plaintiff more than 50 times in an attempt to collect the debt it alleged Plaintiff owed.

33. Beginning in December 2017, long after Plaintiff had cancelled any contract Defendant may have believed it had with her, Defendant began calling Plaintiff nearly every day to tell her she owed a past-due amount.

34. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that she believed it was an autodialer due to the sheer number of phone calls she received, and because she would hear a pause before a live agent came on the line.

35. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (901) ***-0321, and was the called party and recipient of Defendant's calls.

36. Defendant placed an exorbitant amount of automated calls to Plaintiff's cellular telephone at (901) ***-0321 in an attempt to collect on the alleged debt.

37. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls as being initiated from phone numbers including, but limited to: (901) 586-0387, (901) 612-2108, (901) 466-2217, (901) 209-4040 and (901) 444-3496. Plaintiff also received text messages from Defendant from the number (877) 624-2216.

38. Due to the volume of calls, Plaintiff was not able to keep a complete log but, by way of example, Defendant called Plaintiff as follows:

| Date | Time | # Defendant Called from: |
|---|---|---|
| 12/18/2017 | 12:34 PM | 901-586-0387 |
| 12/20/2017 | 12:04 PM | 901-586-0387 |
| 12/27/2017 | 12:16 PM | 901-586-0387 |
| 1/3/2018 | 2:12 PM | 901-586-0387 |
| 1/15/2018 | 12:30 PM | 901-586-0387 |
| 1/16/2018 | 12:39 PM | 901-586-0387 |
| 1/20/2018 | 10:38 AM | 901-586-0387 |
| 1/24/2018 | 1:21 PM | 901-586-0387 |
| 1/29/2018 | 12:47 PM | 901-586-0387 |

| 2/5/2018 | 12:41 PM | 901-586-0387 |
| --- | --- | --- |
| 2/28/2018 | 6:11 PM | 901-612-2108 |
| 3/3/2018 | 12:22 PM | 901-444-3496 |
| 3/7/2018 | | |
| 3/9/2018 | 4:12 PM | 901-466-2217 |
| 3/10/2018 | 12:14 PM | 901-612-2108 |
| 3/12/2018 | 7:25 PM | 901-444-3496 |
| 3/13/2018 | 4:52 PM | 901-209-4040 |
| 3/14/2018 | 4:24 PM | 901-466-2217 |
| 3/15/2018 | 3:54 PM | 901-612-2108 |
| 3/16/2018 | 2:54 PM | 901-444-3496 |
| 3/17/2018 | 12:09 PM | 901-209-4040 |
| 3/19/2018 | 2:28 PM | 901-466-2217 |
| 3/19/2018 | 7:40 PM | 901-612-2108 |
| 3/20/2018 | 2:24 PM | 901-444-3496 |
| 3/20/2018 | 7:30 PM | 901-209-4040 |
| 3/21/2018 | 5:10 PM | 901-466-2217 |
| 3/22/2018 | 3:37 PM | 901-612-2108 |
| 3/23/2018 | 4:34 PM | 901-444-3496 |
| 3/24/2018 | 12:17 PM | 901-209-4040 |
| 3/26/2018 | 3:10 PM | 901-466-2217 |
| 3/26/2018 | 6:15 PM | 901-612-2108 |
| 3/27/2018 | 3:05 PM | 901-444-3496 |
| 3/27/2018 | 6:09 PM | 901-209-4040 |
| 3/28/2018 | 4:52 PM | 901-466-2217 |
| 3/29/2018 | 3:09 PM | 901-612-2108 |
| 4/2/2018 | 2:54PM | 901-444-3496 |
| 4/2/2018 | 7:35PM | 901-209-4040 |
| 4/3/2018 | 2:39PM | 901-466-2217 |
| 4/4/2018 | 4:00PM | 901-612-2108 |
| 4/5/2018 | 5:14PM | 901-444-3496 |
| 4/6/2018 | 3:00PM | 877-624-2216 (Text Message) |
| 4/7/2018 | 2:54PM | 901-209-4040 |
| 4/9/2018 | 3:54PM | 901-466-2217 |
| 4/10/2018 | 3:10PM | 901-612-2108 |
| 4/12/2018 | 6:54PM | 901-444-3496 |
| 4/13/2018 | 1:00PM | 877-624-2216 (Text Message) |

39. On or around March 7, 2018, Plaintiff answered a call from Defendant to her aforementioned cell phone number. Plaintiff explained to Defendant's agent that she had sent in the cancellation notice. She told Defendant's agent that she had retrained an attorney because

they had called her more than 50 times.  Plaintiff instructed Defendant's agent to stop calling her cellular telephone.

40. Each subsequent call Defendant made to Plaintiff's aforementioned cellular telephone number was knowing and willful and made without Plaintiff's "express consent."

41. Despite Plaintiff clearly and unequivocally revoking any consent Defendant may have believed it had to call Plaintiff on her cellular telephone, Defendant continued to place automated calls to Plaintiff.

42. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can be reasonably expected to harass.

43. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals just as it did to call Plaintiff's cellular telephone in this case.

44. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to call Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

45. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

46. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

47. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

48. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

49. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

50. From each and every call Defendant placed to Plaintiff's cell phone without express consent, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

51. From each and every call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendant's call.

52. From each and every call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

53. From each and every call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered an injury in the form of a nuisance and annoyance. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the

usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

54. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

55. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's telephone or network.

56. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular telephone and her cellular telephone services.

57. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, and aggravation.

## COUNT I
## Violation of the TCPA

58. Plaintiff fully incorporates and realleges paragraphs 1 through 56 as if fully set forth herein.

59. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded that the calls stop.

60. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without

Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### Violation of the THSSA

61. Plaintiff fully incorporates and realleges paragraphs 1 through 56 as if fully set forth herein.

62. At all times relevant hereto, Plaintiff was a "buyer" as that term is defined by Tenn. Code Ann. § 47-18-702(2).

63. At all times relevant hereto, Defendant was a "seller" as that term is defined by Tenn. Code Ann. § 47-18-702(5).

64. The sale at issue in this matter was a "home solicitation sale" as that term is defined by Tenn. Code Ann. § 47-18-702(4).

65. On October 23, 2017, Defendant failed to comply with Tenn. Code Ann. § 47-18-704(a), (b) and (c) when it failed to present Plaintiff with a receipt that designates as the date of the transaction the date on which Plaintiff actually made payment in whole or in part or signed.

66. On Friday, November 9, 2017, Defendant provided Plaintiff with a notice of cancellation form for the first time. The form stated the date of transaction as November 9, 2017. The form provided Plaintiff until midnight on November 14, 2017 to cancel the transaction.

67. On November 13, 2017, Plaintiff faxed her completed notice of cancellation to Defendant in compliance with the instructions contained therein, as required by, and in conformity with Tenn. Code Ann. § 47-18-703.

68. Defendant violated Tenn. Code Ann. § 47-18-705 by failing to tender to Plaintiff within ten days all payments made by Plaintiff and any note or other evidence of indebtedness.

69. Defendant never requested that Plaintiff tender any goods provided.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for actual damages and any other such relief permitted by law or that the Court may deem just and proper.

Respectfully submitted,

/s/ Frank H. Kerney, III, Esquire
Frank H. Kerney, III, Esquire
Tennessee Bar No.: 035859
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile:  (813) 223-5402
FKerney@ForThePeople.com
JKersey@ForThePeople.com
JessicaK@ForThePeople.com
*Counsel for Plaintiff*